IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **RYAN BAXTER,** on behalf of himself and a Class of all individuals similarly situated, ) ) ) ) | |
| v. ) ) | Cause No. |
| **APPLE, INC.** ) <br>     <u>Serve</u>: ) <br>     The Corporation Company ) <br>     30600 Telegraph Road ) <br>     Bingham Farms, MI 48025 ) <br> and ) <br> ) <br> **AT&T MOBILITY, L.L.C.,** ) <br> ) <br>     <u>Serve</u>: ) <br>     The Corporation Company ) <br>     30600 Telegraph Road ) <br>     Bingham Farms, MI 48025 ) <br> ) <br>     Defendants. ) | |

## **COMPLAINT**

COMES NOW Ryan Baxter ("Baxter")("Plaintiff"), by and through counsel, on behalf of himself and a Class of individuals similarly situated, and files this Class Action Complaint against Defendants Apple, Inc. and AT&T Mobility, L.L.C. (collectively "Defendants"), to-wit:

### **PARTIES. JURISDICTION AND VENUE**

1. Plaintiff Ryan Baxter is a resident of Fair Haven, Michigan, which is in St. Clair County, within the Eastern District of Michigan. Plaintiff is a citizen of Michigan.

2. Defendant Apple, Inc. ("Apple") is a California corporation with its principal place of business in Cupertino, California. Apple is a citizen of California.

3. Defendant AT&T Mobility, L.L.C. ("AT&T") is a Delaware limited liability corporation with its principal place of business in Atlanta, Georgia. AT&T is a citizen of Georgia and Delaware.

4. Apple is one of the largest computer manufacturers in the world.

5. AT&T is one of the largest mobile phone companies in the world.

6. Both are Fortune 500 companies, with annual sales in the billions of dollars.

7. Both Apple and AT&T do business in the Eastern District of Michigan.

8. Both Apple and AT&T perform systematic and continuous business in Michigan.

9. Defendants' deception and fraud in connection with the sale of 3G iPhones occurred in Michigan.

10. Under Michigan's long-arm statute, both AT&T and Apple have sufficient minimum contacts to establish *in personam* jurisdiction over them in the Courts of Michigan. Under the Due Process Clause of the Constitution, AT&T and Apple have sufficient minimum contacts to establish *in personam* jurisdiction over them in Michigan.

11. This lawsuit relates to the Defendants' employment of deception and concealment in connection with the sale and advertisement of merchandise to Plaintiff, relating to the sale of 3G and 3G-S iPhones purchased from Apple Stores and AT&T Stores. This lawsuit is based upon violations of the Michigan Consumer Protection Act ("MCPA"), *MCL Secs. 445.901 et seq.*

12. Plaintiff became aware of certain false statements made by Defendants in the Eastern District of Michigan.

13. This cause of action accrued in the Eastern District of Michigan.

14. Pursuant to the Class Action Fairness Act, the district courts have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interests or costs and is a class action in which any member of the class is a citizen of a State different from any defendant. 28 U.S.C. Sec. 1332(d)(2)A).

15. Here, Plaintiff is a member of the class and is a citizen of Michigan. The defendants are citizens of California, Georgia, and Delaware. Therefore, the diversity requirement is satisfied.

16. The amount in controversy in this matter, exclusive of interests and costs, is expected to exceed $5,000,000.

17. The "primary defendants" from whom significant relief is sought and whose alleged conduct forms the basis for the claims asserted by the class are AT&T Mobility, L.L.C. and Apple, Inc. Neither is a citizen of Michigan.

18. No defendants are States, State officials, or other governmental entities.

19. Accordingly, jurisdiction in federal court is allowed under 28 U.S.C. Sec. 1332(d).

20. Venue in the Eastern District of Michigan is appropriate under 28 U.S.C. Sec. 102(a).

## BACKGROUND FACTS

21. In January 2007, the iPhone was launched. The iPhone was manufactured and created by Defendant Apple. The iPhone is a combination of an iPod (which stores thousands of music files and plays them back for the listener) and a cellular phone (which allows users to talk on the telephone while mobile) with an incredible amount of creative functionality. The cell phone portion of the iPhone works exclusively with the AT&T

cellular phone network. Defendants Apple and AT&T launched the iPhone as a joint venture. Both AT&T and Apple sold the iPhone in their respective stores.

22. The original version of the iPhone was called the "2G." The next generation, launched in July 2008, was called the "3G." The most recent version, launched in June 2009, is called the "3G-S."

23. Since its creation, one flaw of the original 2G iPhone was that it did not allow "Multimedia Messaging Service," or "MMS," which, among other things, allows users to send a picture to another user's cell phone.

24. Apple advertised heavily that the new version of iPhone, the 3G, as well as the even newer version, the 3G-S, would allow MMS. Apple's print and video advertisements in on television, the Internet, the radio, newspapers, and direct mailers all touted the availability of MMS.

25. Similarly, AT&T advertised that the 3G and 3G-S would allow MMS. MMS functionality was one of the prime reasons people chose to buy or upgrade to a 3G or 3G-S.

26. MMS has been available on other types of cell phones for many years.

27. From Apple's website:

> ***Send MMS***
> *Take a photo or shoot some video, then send it via Messages. You can also send audio recordings from within Messages, information from Contacts, and directions from Maps.*

4

28. A Pop-Up window on Apple's website reads:

> ***Sending Photos and Videos***
>
> *You can take a photo or make a video (iPhone 3GS only) from within Messages and include it in your conversation with another MMS-capable device.*

29. From AT&T's website:

> ***Messages***
>
> *Use messages to send text, photos, audio, video, and more.  Forward a whole message or just the important parts.*

30. After the 3G iPhone came out in July 2008, customers who purchased the 3G iPhone began to realize that MMS was not available.

31. In response, AT&T published this in the AT&T Answer Center page of their website for problems related to MMS:

> *Customers who are sent a MMS message and own a non-MMS capable device will receive a text message instead of an actual MMS message.  The message will contain the website address of www.viewmymessage.com/1 or www.viewmymessage.com/2 as well as a user name and password.  To view the MMS message, please access the website from a computer and enter the user name and password provided in the text message.*

32. Incredibly, AT&T was directing customers interested in MMS ***to go to a computer*** to view the message!

33. The AT&T Answer Center has this unhelpful solution for the problem "*Send, Receive, or Delete a Picture, Audio, or Video Multi-Media Message (MMS) with iPhone*":

> *Goal:* Send, Receive, or Delete a Picture, Audio or Video Multi-media Message with iPhone
>
> *Symptom:* Unable to Send, Receive, or Delete a Picture, Audio, or Video Multimedia Message with iPhone
>
> *Fix:* iPhone does not support sending, or receiving picture, audio, or video multimedia messages. If an MMS is sent to the iPhone, it will receive a text message instead that contains a link to a website address where the message can be viewed.

The "Fix" was essentially to say "tough luck."

34. In early 2009, sales representatives for both Apple and AT&T began assuring customers that MMS would be available on both the 3G and the 3G-S beginning on June 17, 2009, when the new iPhone OS 3.0 Software Update would become available. Representatives in Apple and AT&T stores assured customers that with this new application, which could be downloaded for free, MMS would be available.

35. In the spring of 2009, AT&T began a huge sales drive to sell its older 3G models in preparation for the launch of 3G-S. AT&T lowered the price of a 3G to less than $100 and assured customers that the new 3.0 Software Upgrade would solve all their problems. In reliance upon this assurance, millions of customers purchased the 3G, and, later, the 3G-S.

36. Apple posted on its website, on the "iPhone OS 3.0 Software Update" page, that MMS would be available, so that customers could "send MMS messages and include photos, audio, and contact info. Even tap to snap a picture right inside Messages." A graphic showed the familiar iPhone test message bubbles with a picture inserted.

37. In AT&T stores, AT&T installed large white kiosks with the Apple logo in early 2009 which contained a video reel showing the functionality of the 3G-S. This video

6

clearly shows individuals sending MMS pictures and video. There is nothing in the video reel or anywhere in the AT&T store suggesting that this capability was not immediately available.

38. Millions of customers, relying on the false and deceptive representations and concealments of Apple and AT&T purchased the 3G and 3G-S, waiting for the wonderful day in June 2009 when the new application would be available which would allow MMS.

39. Unfortunately, after downloading the new 3.0 Software Update application, MMS still did not work on both the 3G and 3G-S.

40. The Apple troubleshooting page explained the problem:

> *To send and receive MMS messages on your iPhone 3G, do the following:*
>
> *1. Verify that your iPhone and wireless carrier meet the system requirements. To use MMS you need:*
>
> *--iPhone OS 3.0 installed on iPhone 3G. The original iPhone does not support sending or receiving MMS messages. Install iPhone OS 3.0 if necessary.*
>
> *--**A wireless carrier that supports MMS**.*
>
> *--A coverage area in which you can place and receive a call, and access the Internet using Safari on your iPhone (3G network coverage recommended).*
>
> *2. If **this article** shows that your carrier supports MMS, you should see MMS Messaging in the Settings>Messages>General screen as shown below.*

41. The "this article" phrase was a blue-colored hyperlink. Clicking on that hyperlink lead to a page showing several countries. Clicking on North America, and viewing the graph for USA, under the heading "AT&T" it showed that AT&T was NOT a carrier

which offers MMS! Of course, AT&T is the ONLY carrier in the United States used by the iPhone.

42. In other words, AT&T did not support MMS.

43. For many months, the iPhone could not offer MMS as claimed.

44. The only excuse offered by AT&T and Apple is a mouseprint disclaimer on the website, in barely readable font, which reads "*MMS Support from AT&T coming in late summer*." This disclaimer is not in any AT&T stores. In some Apple stores, it is contained in a store display, again at the bottom in barely legible mouseprint.

45. None of the representatives in either the Apple or AT&T stores advised consumers that the MMS functionality of the phones would only work after AT&T provided the appropriate support for MMS, supposedly in "late summer."

46. AT&T, contrary to representations of Apple and AT&T, did NOT provide support for MMS by "late summer."

47. AT&T finally provided initial support for MMS on or about September 25, 2009, which, by any definition, is beyond the summer. Users are waiting to see if MMS will work for all customers. However, all the millions of purchasers of the 3G and the 3G-S iPhones who purchased prior to September 25, 2009 were deceived and cheated out of what they thought they were purchasing—a phone with MMS functionality.

### NAMED PLAINTIFF'S FACTUAL ALLEGATIONS

48. On or around June 21, 2009, Ryan Baxter went into an Apple store, located at 17360 Hall Road, Suite 181, Clinton Township, Michigan 48038. This store is located in Macomb County, Michigan and is located in the Eastern District of Michigan.

49. Ryan Baxter was interested in a phone with MMS functionality.

50. Plaintiff was led to believe that the iPhone provided MMS.

51. Based upon the assurance that the iPhone would have MMS functionality, Baxter purchased the 3G-S iPhone.

52. When the 3.0 Software Upgrade became available, Baxter downloaded it.

53. Despite the download, MMS still did not work.

54. Baxter subsequently learned that AT&T would not be providing support for MMS until sometime in the late summer of 2009, although, in fact, such support was not provided by the late summer of 2009.

55. Baxter never saw any microprint disclaimer about "AT&T Support for MMS coming in late summer" on the Apple or AT&T websites.

56. Baxter has been damaged in that for many months he has been unable to send or receive MMS messages.

## CLASS ACTION ALLEGATIONS

57. This action is brought by Plaintiff pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and thousands of other iPhone 3G and 3G-S purchasers from Apple and AT&T who are similarly situated to Plaintiff. The class is defined as follows:

## CLASS DEFINITION

**All residents of Michigan who, between July 1, 2008 and September 25, 2009, purchased a 3G or 3G-S iPhone from either AT&T Mobility L.L.C. or Apple, Inc.**

58. The class is so numerous that joinder of all members is impractical. Published news reports stated that over a million customers purchased the 3G iPhone the day it became available. Many of those customers are located in Michigan. It is estimated that the Class will be composed of at least 100,000 individuals.

59. Each Plaintiff will be claiming damages for the 3G or 3G-S iPhone he or she purchased. A 3G iPhone was selling from anywhere between $100 and $500.

60. No attorney would have the financial resources to litigate this case against opposition from the Defendants when the potential for recovery is so small for each class member. Therefore, joinder of all similarly situated plaintiffs is appropriate.

61. The claims asserted by Plaintiffs on behalf of themselves and all similarly situated Class members present questions of fact or law common to the class, including, *inter alia*, whether Defendants engaged in deceptions and concealments in making claims that MMS was available on the 3G and 3G-S in violation of the Michigan Consumer Protection Act ("MCPA"), MSL *Secs. 445.901 et seq*.

62. The claims asserted by Plaintiffs on behalf of themselves are typical of the other Class members' claims in that the other Class members also received similar representations about MMS.

63. Plaintiffs will fairly and adequately protect the interests of the members of the Class in that their claims are similar, the amount of damages are similar, and the relief requested is similar.

64. The prosecution of separate actions by individual members of the Class would create the risk of: (a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendants; and (b) adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Furthermore, Defendants have acted or refused to act on grounds generally applicable to

the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

65. Plaintiff's counsel is experienced legal class counsel, and will adequately protect the interests of the Class members.

66. To Plaintiff's knowledge, there currently are no other similar actions filed against these Defendants making similar claims.

67. Questions of law and fact common to the members of the class predominate over questions affecting individual members. Those common questions of law and fact include:

**Fact Questions**

(a) did the Defendants know that AT&T was unable to support MMS, and, if so, when did they gain this knowledge;

(b) did the Defendants know that most customers viewed MMS as an important functionality;

(c) did the Defendants conceal from consumers that: (1) AT&T had not taken appropriate actions to support MMS and had no plans to do so for many months; and (2) the 3.0 Software Upgrade would not fix the problem and make MMS available (by itself);

(d) was Defendant aware of alternative methods of disclosure which would have more adequately warned customers of the unavailability of MMS and the reason for the non-availability of MMS;

(e) did the Defendants market and advertise their 3G and 3G-S phones as supporting MMS with no mention, or little mention, of the fact that AT&T was not equipped to support MMS;

11

(f) do the salespersons at Apple and AT&T have any scripts or training materials which would provide them with knowledge or information as to the fact that AT&T was unable support MMS, or any advice as to when the AT&T will support MMS;

(i) according to Apple's and AT&T's marketing research, is MMS functionality an important decision driver for residential consumers when buying iPhones;

(j) did any officials from AT&T or Apple believe that the advertisements to customers relating to MMS were misleading to consumers;

(m) did AT&T or Apple receive complaints from consumers about the lack of MMS functionality, and what was their response;

(n) what did Defendants tell their own managers and employees internally about MMS functionality;

(o) were any committees or work groups created to solve the MMS problem, and what was said in their meetings;

(p) why don't Apple and AT&T tell customers the truth about MMS when the customer is buying the product in the store; and

(r) other fact questions.

**Law Questions**

(a) did the Defendants engage in an unfair, fraudulent, or deceptive practice in connection with the sale or advertisement of merchandise under the MCPA when they represented to Michigan consumers that their iPhones would have MMS functionality;

(b) did the Defendants employ any deception, fraud, false pretense, false promise, or misrepresentation, in connection with the sale or advertisement of merchandise under the

12

MCPA when they represented to Michigan consumers that their iPhone would have MMS functionality;

(c) did the Defendants employ any deception, fraud, false pretense, false promise, or misrepresentation, in connection with the sale or advertisement of merchandise under the MCPA when they represented to Michigan consumers that the 3.0 Software Upgrade would allow their iPhones to have MMS functionality?

(d) did the Defendant conceal, suppress, or omit material facts when they failed to reveal to consumers that: (a) the systems of AT&T—the exclusive phone network for the iPhone-- did not support MMS functionality; (b) AT&T would not have the systems upgraded for many months; and (c) the 3.0 Software Upgrade would not, by itself, solve the problem;

(e) to what extent and in what amount were Plaintiffs and the Class damaged by Defendants' unlawful actions?

(f) Does the Defendants' conduct constitute such intentional and outrageous conduct so as to subject the Defendants to an award of punitive damages under the MCPA?

(f) do the Defendants have affirmative defenses which are common to all class members? and

(g) other legal questions.

68. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

69. To Plaintiff's knowledge, no other individual has expressed an interest in bringing an individual action against Defendants based upon these claims.

70. It is desirable to concentrate the litigation of these many claims in one forum.

13

71. There will be very few management difficulties likely to be encountered if this case is certified as a class action.

72. Accordingly, class certification is appropriate.

# COUNT I
### (Michigan Consumer Protection Act, MCL *Secs. 445.901 et seq.* )

73. Plaintiffs reincorporate and realleges Paragraphs 1 through 72 as if more fully set forth herein.

74. *MCL § 445.903,* entitled "Unfair, unconscionable, or deceptive methods, acts, or practices in conduct of trade or commerce; rules; applicability of subsection (1)(hh)," provides as follows":

(1) Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful and are defined as follows:
   * * *
(c) Representing that goods or services have…characteristics…uses, benefits, or quantities that they do not have….;
* * *
(e) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.
* * *
(q) Representing or implying that the subject of a consumer transaction will be provided promptly, or at a specified time, or within a reasonable time, if the merchant knows or has reason to know it will not be so provided.
* * *
(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;
* * *
(t) Entering into a consumer transaction in which the consumer waives or purports to waive a right, benefit, or immunity provided by law, unless the waiver is clearly stated and the consumer has specifically consented to it.
* * *
(w) Representing that a consumer will receive a rebate, discount, or other benefit as an inducement for entering into a transaction, if the benefit is contingent on an event to occur subsequent to the consummation of the transaction.
* * *

(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.
(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.
* * *

75.  For the reasons set forth above, Defendants violated *MCL Sec.445.903(1)(c), (e), (q), (s), (t), (w) (bb), and (cc)* in connection with their advertisement and sale of 3G and 3G-S iPhones by representing that the iPhones were capable of providing MMS functionality at the time of sale when, in fact, they were not; and, with respect to any statements that MMS functionality would be provided "in June 2009," or "in late summer," misrepresented facts known by Defendants because said MMS functionality was in fact not provided by June 2009 or "late summer."  Defendants also failed to disclose material facts to the consumer about the lack of MMS functionality, including the fact that AT&T had not taken appropriate actions to provide for support of MMS; Defendants knew that MMS would not be available for many months; and Defendants knew, but failed to disclose, that the 3.0 Software Upgrade in June 2009 would not provide, in and of itself, the availability of MMS functionality.

76.  *MCL § 445.911*, entitled, "Action by person for declaratory judgment, injunction, or and actual damages; class action by person for actual damages; order; hearing; receiver; sequestration of assets; cost of notice; limitations," provides as follows:

(1) Whether or not he seeks damages or has an adequate remedy at law, a person may bring an action to do either or both of the following:
   (a) Obtain a declaratory judgment that a method, act, or practice is unlawful under section 3.
   (b) Enjoin in accordance with the principles of equity a person who is engaging or is about to engage in a method, act, or practice which is unlawful under section 3.
    * * *

(3) A person who suffers loss as a result of a violation of this act may bring a class action on behalf of persons residing or injured in this state for the actual damages caused by any of the following:
   (a) A method, act, or practice in trade or commerce defined as unlawful under sec. 3….
* * *
(4) On motion of a person and without bond in an action brought under subsection (3) the court may make an appropriate order: to reimburse persons who have suffered damages; to carry out a transaction in accordance with the aggrieved persons' reasonable expectations; to strike or limit the application of unconscionable clauses of contracts to avoid an unconscionable result; or to grant other appropriate relief. The court after a hearing may appoint a receiver or order sequestration of the defendant's assets if it appears to the satisfaction of the court that the defendant threatens or is about to remove, conceal, or dispose of his assets to the detriment of members of the class.
(5) If at any stage of proceedings brought under subsection (3) the court requires that notice be sent to the class, a person may petition the court to require the defendant to bear the cost of notice. In determining whether to impose the cost on the defendant or the plaintiff, the court shall consider the probability that the person will succeed on the merits of his action.
   * * *
(7) An action under this section shall not be brought more than 6 years after the occurrence of the method, act, or practice which is the subject of the action nor more than 1 year after the last payment in a transaction involving the method, act, or practice which is the subject of the action, whichever period of time ends at a later date. However, when a person commences an action against another person, the defendant may assert, as a defense or counterclaim, any claim under this act arising out of the transaction on which the action is brought.

77. Defendants employed, in connection with the sale and advertisement of 3G and 3G-S iPhones, to Michigan consumers, deception, fraud, false pretense, false promise, misrepresentation, and unfair practices, including but not limited to representing that the phones would support MMS when Defendants knew, in fact, that they would not support MMS.

78. As a direct result of the deceptions, frauds, false pretenses, misrepresentations, unfair practices, concealments, suppressions, and omissions of Defendants, Plaintiffs have suffered an ascertainable loss of money, namely the difference in value between the iPhone as represented and the iPhone as it actually exists.

79. Moreover, Defendants actions were intentional and outrageous, without any justification or excuse, and warrant the imposition of punitive damages under the MCPA.

80. In the event Plaintiffs are the prevailing parties, Plaintiffs also seek a reasonable attorney's fees and costs under the MCPA.

## RELIEF SOUGHT

81. Plaintiff reincorporates and realleges Paragraphs 1 through 80 as if more fully set forth herein.

82. Plaintiffs seek the following relief:

(a) an order, entered as soon as practicable, certifying this case as a class action under both Rule 23 and the MCPA;

(b) an order directing that appropriate notice to class members be delivered;

(c) compensatory damages for Plaintiff and the other Class Members in an amount which is fair and reasonable to compensate them for their damages;

(d) punitive damages in an amount which is fair and reasonable;

(e) reasonable attorney's fees and costs; and

(f) such other relief as the Court deems just and proper.

Dated: October 6, 2009 **Respectfully Submitted,**

**ROSENBLUM, SCHWARTZ, ROGERS, GLASS, P.C.**

By: _S/ Joel J Schwartz_____
JOEL J SCHWARTZ, #18652
jschwartz@rsrglaw.com
120 S. Central, Suite 130
St. Louis, MO 63105
Phone: (314) 862-4332
Fax:    (314) 862-8050